478 F.2d 1406
 83 L.R.R.M. (BNA) 2940, 71 Lab.Cas. P 13,836
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
National Labor Relations Board,* Petitioner
v.
Regal China Corporation, Respondent
 No. 72-1442.
 United States Court of Appeals, Seventh Circuit.
 June 20, 1973.
 
 1
 Before CLARK, ASSOCIATE JUSTICE,** SWYGERT, CHIEF JUDGE, AND CAMPBELL, SENIOR DISTRICT JUDGE.
 
 Order
 
 2
 This is an application by the National Labor Relations Board for the enforcement of its order issued against Regal China Corporation [the Company]. 195 NLRB No. 114. The Board found that in discharging employee Carlos Gene Leonard for union activity the Company violated Section 8(a)(3) and (1) of the National Labor Relations Act and that the Company threatened other employees that they too would be discharged for their union activities in violation of Section 8(a)(1) of the Act. The Company contends that there is no substantial evidence to support the Board's findings. However, our examination of the record as a whole reveals ample support for the Board's finding that the discharge of Leonard was founded directly upon his union activities and not attributable solely to deficiencies in his work and that the Company did illegally threaten other employees.
 
 
 3
 Employee Leonard worked for the Company as a ceramic bottle and lamp caster. This job involves some skill and judgment in determining when to remove the different parts of the mold from the ceramic object being cast. While there was conflicting evidence as to Leonard's competence as a caster, the Board could reasonably conclude that he was "not producing scrap at any greater rate than other employees." Leonard was discharged on January 19, 1971. There was evidence that a number of employees were having trouble with wet molds during the first weeks of January. The daily reports of the Company on the quantity and quality of ceramic ware produced indicate an increase in losses on the type of lamp that Leonard was molding. He complained to Supervisor Jenkins about the condition of the molds and was told to do the best he could. His discharge on January 19 was purportedly based on the poor quality of his ware despite the fact that his work record for the period of January 4-19 was no worse than that of other casters. Furthermore, Leonard was capable of both mold-making and casting which made him a more valuable employee since he could be switched from one operation to the other, as was often done when necessary for more effective company operation.
 
 
 4
 The Company suggests on appeal that its objection to Leonard's work was not the quantity of defective ware he produced but the fact that he did not catch his own mistakes and remove ware that might explode in the kiln and necessitate expensive repairs. However, Leonard's termination slip refers only to the alleged poor quality of his ware and the poor condition of his molds, not to any negligence on his part in sending bad ware to the kiln. Nor does the record reveal any actual damage to the kiln. We must reject the Company's argument along these lines as an afterthought lacking support in the record.
 
 
 5
 The Company also challenges the Board's findings that it knew of Leonard's union activities and that it was motivated by anti-union feeling in discharging Leonard. With reference to the union activity, it is clear that the Company was aware of the continuing efforts of the Union to organize. It had been active since 1959 and had suffered two defeats in Board-conducted elections. The Company knew that another election could be demanded as early as March 1971. Leonard was a member of the Union organizing committee; three or four meetings were held at his home. There was testimony that Leonard spoke to "practically the whole company" about the Union. On July 15, 1970 Supervisor Jenkins told Chilcoat, a caster, that Leonard "was going to feel funny when he came in the next day and received a warning slip," and that he was going to ride Leonard and make it so rough for him that he would have to quit, which would teach him a lesson for being pro-union. Supervisor Jenkins concluded by saying that he pitied the pro-union men because "[t]heir days are coming." On January 19, 1971, the day Leonard was discharged, employee Pace asked Jenkins why Leonard had been fired. Jenkins replied: "That is just one. There are more; we are going to get them one by one. You know why we fired him; he was a union guy and that is why we fired him." These statements by Supervisor Jenkins were clear and direct evidence of anti-union motive for discharging Leonard.
 
 
 6
 The question is not whether there was some legitimate basis for the discharge but whether the legitimate basis was the sole procuring cause. Certainly in light of the testimony recounted above the Board could properly conclude that the Company fired Leonard at least in part because of his union activities.
 
 
 7
 Supervisor Jenkins' statement to employee Pace on January 19, 1971, also supports the Board's finding that the Company threatened that other employees would be discharged for their union activities. We conclude, therefore, that substantial evidence on the record as a whole supports the Board's findings.
 
 
 8
 Enforcement of the Board's order is granted.
 
 
 
 *
 13-CA-10354; NLRB No. 114
 
 
 **
 Associate Justice Tom C. Clark, United States Supreme Court, Retired, is sitting by designation